### TOWN OF QUEENSBURY v. CITY OF GLENS FALLS.

(Supreme Court, Appellate Division, Third Department. March 8, 1911.)

1. HIGHWAYS (§ 119*)—COST OF CONSTRUCTION.

 Acts 1898, c. 115, relating to the construction and improvement of highways, as amended by Laws 1901, c. 109, Laws 1902, c. 53, Laws 1904, c. 297, adding section 12a, and Laws 1906, c. 468, established, not only a new system of construction of county highways, but also a new system

---

of keeping them in repair, the intention being to take such roads wholly without the general highway law, and when the board of supervisors of a county charged back to a town, as provided by the act of 1898 as amended, 15 per cent. of the cost of improving a road by macadamizing it, the entire town, including a village located therein, was chargeable therewith, in spite of Highway Law (Laws 1890, c. 568, as amended by Laws 1893, c. 412, and Laws 1898, c. 351) § 53, exempting incorporated villages forming separate road districts from a certain tax for the repair of highways in the town, but providing that the act should not apply to assessments for damages and charges for laying out or altering any road, having no application, since, while strictly speaking, the reconstructing of a dirt road by macadamizing it is not an altering of the highway or the laying out of a new road, yet, under the provisions of the statute authorizing it, such construction is in effect the laying out of a new highway.

[Ed. Note.—For other cases, see Highways, Cent. Dig. § 357; Dec. Dig. § 119.*]

2. HIGHWAYS (§ 119*)—COST OF CONSTRUCTION.

Charter of City of Glens Falls (Laws 1908, c. 29) § 171, providing that the city shall be liable for its proportional share of the indebtedness of the town of Queensbury, and that, when the charter shall take effect, the money belonging to the town shall be proportionally divided except the highway fund, did not impose the whole burden of constructing a state road on the town outside the city limits, or permit the town to retain any moneys on hand except those raised by tax for the annual repair of highways, and hence the city is liable for its proportional share of the cost of constructing state roads.

[Ed. Note.—For other cases, see Highways, Cent. Dig. § 357; Dec. Dig. § 119.*]

Submission of controversy under Code Civ. Proc. §§ 1279–1281, by the Town of Queensbury against the City of Glens Falls. Judgment for plaintiff.

Argued before SMITH, P. J., and KELLOGG, SEWELL, HOUGHTON, and BETTS, JJ.

J. Edward Singleton, for plaintiff.
Joseph A. Kellogg, for defendant.

HOUGHTON, J. The defendant city of Glens Falls [prior to March 13, 1908, a village] is situated in the town of Queensbury in the county of Warren. In November, 1904, the board of supervisors of Warren county duly passed a resolution for the improvement of the highway leading northerly from the limits of the then village of Glens Falls to the village of Lake George, and in June, 1907, passed a similar resolution for the improvement of the highway running from the easterly limits of that village to the village of Sandy Hill. These resolutions were passed in pursuance of chapter 115 of the Laws of 1898, and the various amendments thereto, and resulted in the building of a macadamized so-called "State Road," aggregating about seven miles in length. The plaintiff, town of Queensbury, has paid or obligated itself to pay 15 per cent. of the total cost as provided by the statute. The defendant, city of Glens Falls, has refused to pay any part of the 15 per cent., and this submission is for the purpose of determining whether or not it is liable so to do.

[1] The principal ground under which exemption is claimed is

under the provisions of section 53 of the highway law. Laws 1890, c. 568, as amended by Laws 1893, c. 412, and Laws 1898, c. 351. So far as material that section is as follows:

"Any town voting in favor of the money system shall annually raise by taxation to be levied and collected the same as other town taxes for the repair of highways, an annual sum of money which shall be equal to at least one-half the value of the commutation rates for highway labor, which would be assessable under the labor system. But in any town in which there may be an incorporated village which forms a separate road district and wherein the roads and streets are maintained at the expense of such village, all property within such village shall be exempt from levy and collection of such tax for the repair of highways of such town. * * * But this act shall not apply to assessments made for damages and charges for laying out or altering any road or for erecting or repairing any bridge in such town."

At the times of the passage of the resolutions by the board of supervisors for the improvement of the highways in question, the village of Glens Falls was an incorporated village forming a separate road district, and its streets were maintained at its expense without contribution from the town at large.

No similar controversy seems to have arisen, and we must determine the liability of the defendant to contribute or its exemption from contribution from the reading of the act of 1898 and its various amendments. That act established a new system of highways. It provided that the board of supervisors of any county might pass a resolution that the public interest demanded the improvement of any highway within the county, and transmit the same to the state engineer, who was required to investigate and determine whether the highway was of sufficient importance to demand improvement, and to certify his approval or disapproval of the resolution. If he approved it, he was to make plans straightening it and reducing its grades, describing how it should be reconstructed, whether of telford, macadam, gravel, or other construction. If additional right of way was needed, the board of supervisors was required to make provision therefor. Bids were to be obtained and the contract let and the road constructed under the supervision of the state engineer, one half the expense of which was to be paid by the state and the other half by the county at large in the first instance, with power in the board of supervisors to charge 15 per cent. of the whole "upon the town in which the improved highway or section thereof is located." On the completion of the road the duties of the state engineer ceased. He was required to serve notice upon the board of supervisors that such highway had been constructed, and, after a certain time, the board was deemed to accept the same as a county road, and apportion the expense as empowered by law. Throughout the act the term "construction and improvement" of highway is used. In 1901 (chapter 109) the law was amended giving the board of supervisors power to apportion the expense of maintaining such a road "upon the town or towns which such board deems benefited thereby." In 1902 (chapter 53) this provision was further amended requiring the commissioner of highways in the town in which said improved highway was located to keep the same in repair under the direction and supervision of the state engineer, and according to such rules as he should pre-

scribe, and, if there was failure so to do, the state engineer was empowered to make the repairs at the expense of the state, the same to be charged up against the county with power in the board to apportion. In 1904 (chapter 297) section 12a was added, which empowered the highway commissioner of the town to enter upon adjacent lands and make ditches for the purpose of draining the road, damages therefor to be a town charge, if the commissioner could agree with the landowner, otherwise the damage was to be determined in the same manner as for the laying out and opening of highways. In 1906 (chapter 468) the maintaining and repair of such a road was placed wholly in the hands of the state engineer, and a charge of $50 per mile or fraction thereof was made upon any town in which such highway was located, to be paid to the State Comptroller, and paid out by him on certificate of the state engineer.

From the act and the various amendments which have been referred to, it is apparent that the Legislature intended to take this class of roads wholly without the general highway law, and to establish, not only a new system of construction, but a new system of keeping them in repair. The cost of construction even to the extent of 15 per cent. was not put upon the town in the first instance, but was paid by the county and then levied upon the town. If additional land was required for the purpose of widening or straightening the highway, the board of supervisors was required to obtain it and the expense incurred was added to the other cost of construction. It is true that the board of supervisors was prohibited by section 1 of the act from laying out a highway within the boundaries of any city or incorporated village (since changed—Highway Law, § 137, c. 25, Consolidated Laws 1909) and that villages which have a separate road district are obliged to maintain their own streets and highways, and that, when a state road has been located to their corporate boundaries, they cannot extend the road by diminishing their own dimensions. Steele v. Village of Glen Park, 193 N. Y. 341, 347, 86 N. E. 26. Nevertheless, we are of the opinion that, when the board of supervisors of Warren county charged back to the town of Queensbury the 15 per cent. of the cost of constructing the roads in question, the entire town including the village was chargeable therewith, and that section 53 of the highway law had no application, and did not relieve the village from paying its proportional share. Confessedly, even under that section, the village would have been liable for the opening or altering of any highway in the town outside the limits of the village. While, strictly speaking, the reconstructing of a dirt road by macadamizing it is not an altering of the highway or the laying out of a new road, under the provisions of the statute authorizing such construction it is in effect the laying out of a new highway. If the Legislature had intended to exempt villages lying within towns in which such roads were constructed, it could have easily so provided, and the fact that it did not make such exemption is significant that it did not intend so to do.

[2] Nor is the defendant relieved by section 171 of its charter. Laws 1908, c. 29. That section provides that the defendant city shall

be liable for its proportional share of the indebtedness of the town of Queensbury, and that, when the charter shall take effect, the moneys belonging to the town shall be proportionally divided "except the highway fund." Manifestly by this provision there was no intention of imposing the whole burden of constructing the state road upon the town outside the city limits, or of permitting the town to retain any moneys on hand except those raised by tax for the purpose of the ordinary annual repair of highways.

While the defendant city is compelled to keep its own streets in repair at its own expense and the outlying portions of the town have the benefit of them, it is not at all inequitable that the city should bear its proportional share of the cost of constructing the state roads for it receives a greater benefit from them than the town at large. Aside from any equities, however, we are of the opinion that the defendant is liable to pay its proportionate share of the cost of construction, which is conceded to be .8467 per cent., and judgment is directed in favor of the plaintiff to that effect, without costs. All concur.